# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 17-99 |
| | ) | Judge Nora Barry Fischer |
| WARREN WORTHY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

### I. INTRODUCTION

Presently before the Court is Defendant Warren Worthy's Emergency Motion for Temporary Release in Light of COVID-19 Pandemic, in which he requests immediate release from the Renewal Center where he is currently housed as a condition of supervised release, the Government's Response in opposition thereto, Defendant's Reply and the Government's Sur-reply. (Docket Nos. 102, 104, 107, 110). After careful consideration of the parties' arguments as well as the position of the United States Probation Office, which continues to recommend Defendant's placement at Renewal, (*see* Docket No. 104, ¶ 11), and for the following reasons, Defendant's Motion is DENIED.

### II. BACKGROUND

Defendant pled guilty to one count of distribution and possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), pursuant to a Rule 11(c)(1)(C) plea agreement in which he accepted responsibility for causing the death of H.N. (Docket No. 49-1, ¶¶ C.4, C.5). On November 21, 2018, this Court sentenced Defendant to 30 months' imprisonment followed by a 3-year term of supervised release. (Docket No. 68).

Defendant's supervision commenced on May 7, 2019. A little over a month later, on June 13, 2019, the Probation Office filed a supervised release violation petition as a result of state charges against Defendant stemming from a domestic violence incident involving Amanda Burbidge.[1] (Docket No. 69). Following a violation hearing on July 5, 2019, the Court modified the conditions of supervision to require Defendant to participate in a domestic violence program. (Docket No. 81).

Defendant's non-compliance continued, resulting in another violation petition on November 8, 2019 based on state charges concerning a second domestic incident with Ms. Burbidge. (Docket No. 84). A supplemental petition filed on December 19, 2019 alleged additional violations relative to Defendant's unsuccessful termination from the domestic violence program and mental health treatment and his failure to participate in substance abuse testing/treatment and failure to report to the probation office as directed (collectively, the "supplemental violations"). (Docket No. 92). Following a hearing held on January 7, 2020, at which Defendant admitted to committing the supplemental violations, the Court revoked Defendant's supervised release and sentenced him to 3 months' incarceration followed by a 3-year term of supervised release with the first 180 days to be served at Renewal. (Docket Nos. 100, 101).

On March 24, 2020, Defendant filed the pending Motion requesting immediate release from Renewal because of the COVID-19 pandemic. (Docket No. 102 at 1). Defendant acknowledges that there has not yet been a confirmed case of COVID-19 at Renewal, but he nevertheless maintains that his release is warranted for the "exceptional reasons" presented by the

---

[1] Defendant and Ms. Burbidge have been together since they were 14 years old and they share three children (ages 7, 5 and 4) together. (Docket No. 102 at 7).

pandemic.[2] (*Id.* at 6, 9). Defendant submits that he should be released to the home of Ms. Burbidge so that she can continue to work while he helps care for their three young children whose daycare facility has closed due to the COVID-19 pandemic. (*Id.* at 7-8). Defendant proposes this release plan despite admitting that his relationship with Ms. Burbidge "has been unstable when [he] has needed a stable environment." (*Id.* at 7).

As noted, the Probation Office recommends that Defendant remain housed at Renewal. (Docket No. 104, ¶ 11). Additionally, the Government opposes Defendant's release because: (1) he has not articulated any specific reason warranting release, there have been no confirmed cases of COVID-19 among Renewal residents or staff, and he generally speculates about the possibility of a resident becoming infected; (2) he is benefitting from placement at Renewal and its structure will assist him in completing Court-ordered requirements and help keep any negative conduct in check; and (3) his proposed placement at Ms. Burbidge's residence creates instability given their volatile history and his concession that their relationship is "unstable." (*Id.* ¶¶ 12-30).

In Reply filed on April 7, 2020, Defendant reiterates his general concern about the possibility of exposure to COVID-19 at Renewal but still provides no information indicating that he has a medical condition which places him at higher risk for contracting the virus. (Docket No. 107 at 2-7). Defendant repeats his desire to be released to Ms. Burbidge's residence and

---

[2] Defendant also says that he missed a GED class because he is "forced" to remain at Renewal pursuant to their rules and further complains about the mental health treatment he is receiving, asserting that the Probation Office's alleged failure to promptly obtain a mental health assessment contributed to his claimed difficulties at Renewal. (Docket Nos. 102 at 6; 107 at 7-10). Overall, Defendant criticizes the Renewal component of his revocation sentence, asserting that the "limitations imposed on [him] at Renewal far outweigh the modest benefits, if any." (Docket No. 107 at 10). Contrary to Defendant's position, the Government responds that he is currently attending both mental health and drug and alcohol treatment over the phone and Renewal is attempting to determine how to conduct his GED classes (for which he missed orientation because he overslept) and domestic violence classes by phone. (Docket Nos. 104, ¶ 25; 110, ¶ 10). In this Court's estimation, Defendant's apparent disagreement with the Renewal condition of his revocation sentence and his dissatisfaction with how it is being implemented by the Probation Office and the facility itself are not exceptional reasons to modify that condition and release him from Renewal.

3

alternatively proposes that he can reside at an apartment that his grandmother has offered to rent to him. (*Id.* at 1-2, 10-11).

The Government filed a Sur-reply on April 9, 2020, in which it argues that Defendant continues to rely on speculation about the possibility of exposure to COVID-19 at Renewal, despite no confirmed cases among any inmates or staff at the facility to date. (Docket No. 110, ¶¶ 1-5). The Government submits that Defendant's placement at Renewal remains appropriate and his motion for release should be denied. (*Id.* ¶¶ 12-15).

### III. ANALYSIS

Pursuant to 18 U.S.C. § 3583(e)(2), after considering relevant factors under 18 U.S.C. § 3553(a), the Court may modify, reduce, or enlarge the conditions of supervised release at any time prior to the expiration or termination of the term of supervision. Here, the Court finds that there is no reason, exceptional or otherwise, to modify the conditions of Defendant's supervision and release him from Renewal.

First, the Court recognizes the potential for Defendant's exposure to the COVID-19 virus at Renewal; however, that potential currently exists anywhere in the community. Defendant does not allege that he has been exposed to any individual infected with COVID-19 and the virus has not been detected in any Renewal residents or staff at this time. *See* Docket No. 110, ¶ 5. Moreover, Defendant does not allege that he suffers from any health condition that would make him uniquely susceptible to COVID-19. While the Court is sympathetic to Defendant's general concern about the COVID-19 virus, speculation about possible future conditions does not

constitute a reason for immediate release from Renewal.[3] *See United States v. Raia*, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Additionally, the Court agrees with the Government and the Probation Office that Defendant requires the structured environment Renewal provides. Defendant's prior non-compliance demonstrates that he was either unable or unwilling to abide by certain Court ordered conditions which require his participation in various programs and his general accountability to report to his probation officer. Although Defendant apparently still struggles with inappropriate behavior,[4] the Government and Probation Office submit that he has made strides and has attended more required classes and sessions while housed at Renewal than any other time during his supervision. (Docket No. 104, ¶¶ 21, 23).

Finally, the Court notes that although release is not warranted, Defendant's proposal to reside with Ms. Burbidge is not a viable plan. While on supervision, Defendant was twice arrested

---

[3] This Court and its colleagues have dealt with comparable motions in cases involving a defendant's request for temporary release from pretrial detention or release pending sentencing due to the COVID-19 pandemic, which also were denied. *See e.g., United States v. Derrick Jones*, Crim. No. 18-100, Docket No. 142 (W.D. Pa. Apr. 6, 2020) (Fischer, J.): *United States v. Oshay Love*, Crim. No. 19-301, Docket No. 51 (W.D. Pa. Apr. 3, 2020) (Fischer, J.); *United States v. Michael Bastianelli,* Crim. No. 17-305, Docket No. 164 (W.D. Pa. Mar. 27, 2020) (Fischer, J.); *United States v. Sharod Green*, Crim. No. 19-85, Docket No. 46 (W.D. Pa. Mar. 27, 2020) (Conti, J.); *United States v. David Colaianni*, Crim. No. 19-352, Docket No. 40 (W.D. Pa. Mar. 26, 2020) (Stickman, J.); *United States v. Jamar Perminter*, Crim. No. 19-145, Docket No. 74 (W.D. Pa. Mar. 25, 2020) (Fischer, J.); *United States v. Danny Jackson*, Crim. No. 18-216, Docket No. 237 (W.D. Pa. Mar. 24, 2020) (Ambrose, J.); *United States v. Willie Harris*, Crim. No. 18-152, Docket No. 986 (W.D. Pa. Mar. 20, 2020) (Schwab, J.); *United States v. Dana Penney and Christian Stevens*, Crim. No. 19-8, Docket No. 1795 (W.D. Pa. Mar. 18, 2020) (Ranjan, J.).

[4] The Probation Office indicated that Defendant has tested positive for the use of synthetic marijuana, has been observed to be under the influence of it and/or has been in possession of it, thus continued supervision by a Renewal case manager will assist in keeping such inappropriate conduct in check. (Docket No. 104, ¶ 23).

for domestic violence incidents involving Ms. Burbidge and he even concedes that "their relationship has been unstable when [he] has needed a stable environment." (Docket No. 102 at 7). Defendant's alternate suggestion that he could reside at an apartment rented by his grandmother likewise is not feasible. Again, in this Court's estimation, Defendant requires the structure and close supervision Renewal provides, particularly given his demonstrated unwillingness or inability to comply with Court-ordered conditions as shown by his admission to the supplemental violations.

In sum, Defendant's arguments for release do not outweigh the factors the Court considered under 18 U.S.C. § 3553(a) in revoking his supervised release and sentencing him to a term of imprisonment with supervision to follow, including residence at Renewal for 180 days, which the Court concludes remains appropriate.

## IV. CONCLUSION

For all of these reasons, IT IS HEREBY ORDERED that Defendant's Emergency Motion for Temporary Release in Light of COVID-19 Pandemic (Docket No. 102) is DENIED.

*s/ Nora Barry Fischer*
Nora Barry Fischer
Senior United States District Judge

Dated: April 13, 2020

cc/ecf: All counsel of record